In re Adoption of Shaw: Shaw et al., Appellees, *v.* Kiser, Appellant.

(No. 225—Decided January 24, 1950.)

*Mr. O. E. Young,* for appellees.
*Mr. John H. Houston,* for appellant.

Metcalf, J.  Clement Shaw and Vana Shaw, husband and wife, filed a petition in the Probate Court of Brown County for adoption of Betty Lou Dyer, whose first name appeared at that time to be Dixie Lee Dyer, according to the certificate of birth contained in the

record. The petition was brought under and by virtue of Section 10512-11, General Code (effective January 1, 1946, 121 Ohio Laws, 448).

The petition, after setting forth the other allegations necessary under the above section, alleged in respect to each of the parents of the child sought to be adopted that such parent has "wilfully failed to properly support and maintain said child for a period of more than two years immediately preceding the filing of this petition; and who has not been adjudged incompetent by reason of mental disability." Such allegation is necessary under the provisions of Section 10512-14, General Code (121 Ohio Laws, 450), the pertinent part of which reads as follows:

"No final decree or interlocutory order of adoption shall be entered by the court unless there shall be filed with the court written consents to the adoption, verified or acknowledged, as follows:

"* * *

"(2) By each of the living parents, adult or minor, except as follows:

"* * *

"(d) If it is alleged in the petition that one or both of the parents have wilfully failed to properly support and maintain the child for a period of more than two years immediately preceding the filing of the petition, the court shall cause notice of the filing of said petition and the allegations of such failure to be given such parent or parents as provided in Section 10501-21 of the General Code. After such notice has been given, the Probate Court shall determine the issue as to such failure to properly support and maintain the child. The consent of the parent found by the Probate Court to have wilfully failed to properly support and maintain the child for such period shall not be required."

Proper notices were served on each of the parents. The father appeared in open court and consented to the adoption, but the mother filed an answer in which she denied the allegation of wilfully failing to maintain and support the child; alleged that she was divorced from the father and had since married another person; that by reason of having regained her health she was now in a position to support her child; and that no demand or request had ever been made upon her for any support; and prayed that the petition for adoption be denied and the child be turned over to her as its mother.

A hearing was had as provided by paragraph (2) (d) of Section 10512-14, General Code, and the court found the "allegations and averments of the petition to be true and that the said parents of said child had, during a period of more than two years immediately preceding the filing of said petition, wilfully failed to properly support and maintain said child, and therefore said action is retained by the court for further hearing."

Upon further hearing as provided by law the court found "that the parents of said child were heretofore duly divorced by the Court of Common Pleas of Scioto County, Ohio, but that no decree was made in said cause as to the custody of the children of the parties, but that the father of said child appeared in this court and consented to this adoption.

"The court further finds that said child was born on the 18th day of October, 1937, and that it has resided continuously in the home of the petitioners ever since she was only a few days of age, less than one month old."

The court examined the petitioners separate and apart and stated in its journal entry that each peti-

tioner desired the adoption; that from the testimony taken, the facts stated in the petition were found to be true; that the petitioners are persons of good moral character and reputable standing in the community and possessed of sufficient means and ability to maintain and educate the child properly; that the best interest of the child would be promoted by such adoption; that the child is suitable for adoption; and that all the provisions of law relative to adoption had been complied with. The court entered the following order and decree:

"It is therefore by the court ordered and decreed that said adoption be and it is hereby granted; and it is further ordered that the name of said child be and it is hereby changed from Betty Lou Dyer to Betty Lou Shaw."

The defendant, Dixie Kiser, the mother of the child, appeals on questions of law from the order of adoption, and sets forth four separate assignments of error, all which go to one question, namely, the court's finding that she had wilfully failed to properly support and maintain the child for a period of more than two years immediately preceding the filing of the petition.

The record discloses that on August 15, 1937, approximately two months before the child in question was born, its expectant mother, the appellant herein, went to the home of the petitioners, Mr. and Mrs. Shaw, she being a cousin of Mrs. Shaw, and advised Mrs. Shaw that she wanted her to have the child when it was born. A few days later Mrs. Shaw went to see the appellant to ascertain whether she really meant to give her baby away. She went back the following day, and on both occasions the appellant reiterated that she desired to give the petitioners her

baby, and that she would let them know when it was born. Correspondence passed between them to the same effect.

The evidence discloses further that on the day the baby was born, or shortly thereafter, the petitioners were notified that the baby had been born and that Mrs. Shaw went to the home of appellant and obtained the child. Mrs. Shaw testified that she took the baby back to its mother sometime thereafter and told the mother that they were getting so attached to it they might want to keep it, and that its mother replied that since she had five other children, she did not know what she would do with this baby, and re-emphasized that petitioners could have it. The child was then taken back to petitioners' home where it remained until August 16, 1949, at which time it was nearly 12 years of age. It then visited its mother for a week and two days for the purpose of taking a vacation. It was after this visit that the mother became desirous of obtaining the custody of the child.

The record discloses further that since the birth of Betty Lou her father and mother have divorced; that the father took custody of their other five children; that three of these five are now self-supporting; that the father is maintaining the other two in the city of Dayton; that the mother has since remarried; that neither the father nor the mother has ever supported, maintained or otherwise contributed to the maintenance of this child; and that no demand has ever been made on them for such maintenance or for contribution thereto. The petitioners have treated the matter at all times as if the child was their own, which no doubt accounts for no demand being made upon either of the child's parents for support.

It will be noted in passing that the provision requir-

ing written consent was formerly contained in Section 10512-11, General Code, under which section, all that was necessary was a finding that the parents had failed or refused to support the child for two consecutive years. Such provision is now found in Section 10512-14, General Code, as enacted, effective January 1, 1946, under which it is required that the court find that a parent not consenting must have wilfully failed to properly support and maintain the child for a period of more than two years immediately preceding the filing of the petition, and under which it is also mandatory that the petition contain an allegation to that effect. The petition in the instant case conforms to the statute. Thus it will be seen that the solution of this appeal depends solely upon the interpretation of the word "wilfully" as applied to the conduct of the dissenting mother, the appellant here. Does her failure to maintain and support this child, under all the circumstances shown in the record, amount to wilfullness? There is no question that she has failed so to do, but was it wilful?

Webster's New International Dictionary (2 Ed.), defines wilful as "1. Willing; disposed or ready; also, wishful; desirous. 2. self determined; voluntary; intentional."

Bouvier's Law Dictionary (Baldwin's Century Ed.), defines wilful as "the voluntary act of a party, as distinguished from coercion. * * * intentional, not accidental." Wilful neglect is therein defined as intentional neglect.

Anderson's Dictionary of Law states "in common parlance 'wilful' means intentional, as distinguished from accidental or involuntary."

In 45 Words and Phrases, 238, it is said:

"Willful is a word of familiar use in every branch

of the law, and it amounts to nothing more than this: that the person knows what he is doing, and intends to do what he is doing, and is a free agent.''

It seems clear to this court that in enacting Section 10512-14, General Code, the Legislature was careful to provide that any failure to properly support and maintain a child for a period of more than two years immediately preceding the filing of the petition for adoption must be intentional on the part of the parent, as opposed to such neglect being unintentional.

Counsel for appellant cites and relies heavily upon the case *In Re Goodfleisch*, 73 Ohio App., 17, 53 N. E. (2d), 913, in which the court held under former Section 10512-11, General Code, that where a petition for adoption failed to allege that the parent "has failed or refused to support the child" for such length as provided in that section, and where there is no proof of failure or refusal to support, it was error for the Probate Court to render a decree of adoption without such parents' consent. Counsel reasons that since the enactment of Section 10512-14, General Code (121 Ohio Laws, 148), wherein the phrase, "wilfully failed to properly support and maintain," is substituted, the *Goodfleisch case* is more in point as being determinative of the instant case because of the requirement of wilfulness as applied to the failure to properly support and maintain the child. It seems to this court that counsel is overlooking the other phraseology of former Section 10512-11, General Code, wherein it was provided that the petition must allege and the court find that such parent has *failed or refused* to support the child. There was no such allegation in the petition in the *Goodfleisch case*; nor did the proof in that case substantiate any refusal on the part of the mother to support her child for the time required. In fact, in

that case, as in the instant case, the mother had never been requested to support her child, such support was unnecessary, and she never had an opportunity to either support or refuse. However, in the section under consideration the Legislature in its wisdom eliminated the word "refused" and made the test simply that of wilfully failing to so support. Counsel for appellant also cites the case of *In re Adoption of Gates,* 84 Ohio App., 269, 85 N. E. (2d), 597, decided by the same Court of Appeals that decided the *Goodfleisch case* but since the present section containing the word, wilfully, became effective. However, in the *Gates case* the petitioner did not allege and the Probate Court did not find that the parents so objecting to the adoption had wilfully failed to properly support and maintain the child, finding only that they had not done so. In the *Gates case* the appellate court held that the petition failed to state a good cause of action and that the motion to dismiss should have been sustained and proceeded to do so.

This court agrees with the decisions of the Court of Appeals of the Second Appellate District in both the *Goodfleisch* and *Gates cases,* but insists that neither of those cases is applicable in the instant case. It is of interest to note that in the *Gates case* the court defined wilfully as being intentional. Certainly, the record in the instant case establishes clearly that appellant's failure to properly support and maintain her child has been intentional not only for two years preceding the filing of the petition but since its birth.

It is difficult to conceive that an expectant mother with marital status could deliberately make arrangements for giving away her baby at birth. If this was due, as urged, to ill health and the fact that she was rearing five other children, there may be some excuse.

Such justification may have continued even beyond the time the petitioners offered to return the child, for the reason that the ties of attachment were becoming too strong, if there was any doubt that the mother desired her child. However, as the years passed this mother and her husband were divorced, the father taking custody of and maintaining and supporting the other five children, thus relieving the mother of all responsibility therefor. Even though her health was fully recovered and she remarried, she continued to live in a childless home for years without any effort on her part to either see her child, obtain custody of it, support it, or maintain it. It was only when this daughter, approaching 12 years of age, visited her mother during the summer that appellant then desired her custody. Whatever motive appellant has, or however commendable her desire is now to have her child, certainly her actions hereinabove enumerated justified the finding of the Probate Court that she had wilfully failed to properly support and maintain the child for a period of more than two years immediately preceding the filing of the petition.

The welfare of this child must not be lost sight of. Maintaining and supporting a child means a great deal more than furnishing the material necessities. This mother, the appellant, has wilfully failed and refused to furnish that for which there is no substitute— maternal affection and motherly contact. This duty, neglected on appellant's part, has been admirably performed by the petitioners, and, while this in itself may not control in the determination of the wilfulness of appellant, it is a paramount factor once wilfulness is established. Neither appellant nor counsel have in any way attempted to show that the court was wrong in finding the petitioners suitably qualified to care for

and rear the child, nor do they claim that it is not in the best interest of the child to be adopted.

Counsel for appellant has advised this court that in the event it affirms the judgment of the Probate Court, he will request a certification of this case as being in conflict with the *Gates case, supra.* For reasons stated in the body of this opinion we do not find ourselves to be in conflict with the decision in the *Gates case*, agreeing therewith on the facts therein stated. Therefore, the application to certify is denied.

None of the assignments of error are well taken, and the judgment and decree of adoption must be affirmed.

*Judgment affirmed.*

McCURDY, P. J., and GILLEN, J., concur.