Adolph Stalder and Viva Stalder, Petitioners-Appellees, v. James Robert Stone, Jane Stone and Adale Stauske, Respondents.
On Appeal of Adale Stauske, Respondent-Appellant.

Gen. No. 10,446.

Opinion filed August 28, 1951. Released for publication September 17, 1951.

HAROLD T. BERG, and BRANKO M. STEINER, both of Chicago, for appellant.

BURRELL & BURRELL, and JOHN G. WHITON, all of Freeport, for appellees; DAVID M. BURRELL, of Freeport, of counsel.

MR. JUSTICE DOVE delivered the opinion of the court.

On August 27, 1947, Adolph Stalder and Viva Stalder filed in the county court of Stephenson county their petition to adopt James Robert Stone alleging that he was born on September 29, 1943, and had been placed in their home by Adale Stauske and had resided in their home since August 1, 1945. As the statutory grounds for adoption, they alleged that the parents of the child were unfit to have the child because (a) they had abandoned the child, and (b) had deserted the child for a period of more than six months next preceding the filing of the petition. Upon information and belief, it was alleged that the father of said child was dead, that the name of the mother is Jane Stone, and that it was the desire of petitioners to change the name of the child to Robert James Stalder.

Adale Stauske answered the petition and alleged that she was the natural mother of the child and the sole surviving parent, admitted that she placed said child in the home of petitioners but alleged that such placement was temporary and denied that she was guilty of abandonment of the child or desertion of him as alleged in the petition. The cause was heard resulting in an order finding that the Jane Stone mentioned in the petition was a fictitious person; that defendant, Adale Stauske, is the natural mother of said child and finding her not guilty of abandonment or desertion as charged in the petition. Accordingly, the court denied to petitioners the right to adopt the child.

Thereafter, petitioners filed their motion to vacate this decree and supported the same by affidavit. The substance of their motion to vacate and its supporting affidavit was that respondent was a depraved person and that she was guilty of open and notorious adultery or fornication. Respondent filed her motion to dismiss petitioners' motion to vacate, but upon a hearing the court denied her motion to dismiss and sustained peti-

tioners' motion to vacate and granted them leave to file an amended petition. This amended petition set up the additional statutory grounds for adoption of (a) depravity and (b) open and notorious adultery or fornication. Respondent answered the amended petition denying the charges contained therein, and upon a further hearing the court found the allegations of the amended petition to be true and entered a decree granting to appellees the right to adopt James Robert Stone. To reverse this decree respondent brings the record to this court.

██ Adoption proceedings are special statutory proceedings, and the only question presented to the trial court or to an appellate court on review in a proceeding of this character is whether or not a statutory ground for adoption has been proven. Such questions as what is for the best interests of the child or who is better able to provide for the child are not involved until it is first determined whether or not a statutory ground for adoption exists. (*Jackson v. Russell,* 342 Ill. App. 637; *Hill v. Allabaugh,* 333 Ill. App. 602.)

The record discloses that appellant was born in Jackson county, Wisconsin, in 1909. Her mother died when she was four months of age, and she and her twin sister were adopted by an aunt and uncle. Her father remarried. She and her sister left their foster parents' home in 1929 to go to Chicago where they entered nurse's training, and appellant in 1932 became a registered nurse at West Side Hospital in Chicago, Illinois. In 1933 she was licensed as a nurse by the State of Illinois and has continuously pursued her profession as a nurse except for a few months in 1943. She was Supervisor of the West Side Hospital in Chicago in 1935 and was college nurse and Dean of Women at Concordia Teacher's College in River Forest, Illinois, just prior to her entering the military service of the United States. In 1942 she joined the

United States Army and was commissioned as a Second Lieutenant. While so serving as a nurse in New Caledonia during 1943, she became pregnant as a result of her relationship with an officer in the Army Medical Corps. The child who is the subject matter of this proceeding is the result of that pregnancy. He was born in San Francisco on September 30, 1943.

While in the military service, appellant, in order to account for her child, the said James Robert Stone, related to those with whom she came in contact the following story. She stated that she had met a friend by the name of Jane Stone; that Jane Stone was an unmarried woman, pregnant with child; that the father of her unborn child had been killed in action; that Jane Stone's father was a minister and, when he learned of his daughter's plight, he refused to permit his daughter, an unwed mother, to return home with her illegitimate child and that in order to aid Jane Stone appellant took her child and thereafter told her friends that she had agreed with her friend, Jane Stone, that she would take care of the child and see that he was properly reared. Subsequently, appellant brought the child to her twin sister's home in River Forest, Illinois, where she and her sister cared for the child from December, 1943, until September, 1945, at which time her sister became quite ill and it became necessary for her to find another place for the child as she had in the meantime resumed her profession as a nurse and it was impossible for her to work and to keep the child at the apartment where she was living. After trying a temporary home in Midlothian, the child was taken to the home of appellee, Viva Stalder. Appellant had known the appellees for some ten or more years and had visited in their home on rather intimate terms on many occasions and for varying lengths of time. They lived on a farm near Winslow, Illinois, and are people of about appellant's age,

childless, and are amply able to provide for the child they seek to adopt and are of good character.

The record further discloses that appellant met Lawrence Rhode, the brother of appellee Viva Stalder, in 1933 while he was a patient at the West Side Hospital in Chicago and where she was a registered nurse. She attended him as a special nurse for several weeks and became well acquainted with him and, upon his release from the hospital, accompanied him to his home, which was located on a farm near Winslow, Illinois, where she continued to look after him. Appellant and he developed a friendship for each other which continued during the years preceding her entry into the military service in 1942. Upon her discharge from the military service in August, 1943, and her subsequent return to Chicago, their friendship was resumed and they became engaged to marry. It was Lawrence Rhode who suggested that the child be taken to appellees' home. This was early in September, 1945, and the child was placed in the home of appellees. According to appellant's testimony, which is uncontradicted, she placed the child in the home of appellees with the specific injunction that her action in so doing was not for adoption purposes but was merely to procure a place to board the child. A tentative agreement was made between the appellant and appellees for the support of the child, and about the end of the month of September, 1945, an initial payment of $50 was made by appellant to appellees in pursuance to this agreement. No further payments were ever made by appellant, nor were any further payments for his board and keep ever sought by appellees. Appellant wrote to appellees in the latter part of 1945 and said that she was unable to make any further payments just then, but would do so later, to which appellee Viva Stalder replied to the effect that appellant need not be concerned over her failure to send payments

as that matter could be settled between them at a later date. During the time that her child had been in the home of her twin sister in River Forest, Illinois, appellant regularly paid the sum of $50 a month for his support and in addition she furnished clothing for the child from time to time and provided him with toys on many occasions.

Lawrence Rhode was killed in an automobile accident on November 29, 1945, and appellant attended his funeral in Winslow on December 2nd following. She saw her child on this occasion, and this was the last time she saw him until after appellees had filed their petition for adoption. During that time she kept in touch with her child through correspondence with appellee Viva Stalder, through correspondence with Viva Stalder's mother, who lived on a farm a few miles from Viva Stalder, and through her twin sister, who lived in River Forest. Through her sister she sent the child clothing on several occasions. During the time appellees had the child prior to the filing of the adoption proceedings, appellant received from appellees a number of snapshots of the child. Appellant also sent him gifts for his birthdays in September, 1945, and again in September, 1946, and Christmas presents in the same years. Along with the clothing, gifts and presents, she enclosed notes to the Stalders inquiring about the child. She attempted, without success, on two occasions to obtain life insurance policies on her child.

At the time appellant placed her son in the home of the appellees, she did not tell them that he was her child, nor did she confide in her sister this fact but told them the Jane Stone story heretofore related. After the adoption petition was filed, appellant disclosed to appellees and to her sister, for the first time, that she was the natural mother of the child.

272

 On the basis of the foregoing evidence, counsel for appellees contend that the failure of appellant to disclose the true facts of the parentage of her child constitutes an abandonment of the child within the meaning of the Adoption Act. They further contend that her failure to send money for his support, together with the fact that the mother failed to see the child for a period of almost two years, together with the further fact that she did not establish a home for him in which she could devote her time to his actual care, constitutes desertion within the meaning of the Adoption Act. We are unable to agree with this contention. Abandonment under our adoption statute has been held to mean such conduct on the part of a parent as evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child. (*People ex rel. Bowdry v. Bowdry,* 324 Ill. App. 52; *Hill v. Allabaugh,* 333 Ill. App. 602.) If there has been no abandonment, it is difficult to see how there can be any desertion. (*In re Petition of Ekendahl v. Topol,* 321 Ill. App. 457; *Hill v. Allabaugh,* 333 Ill. App. 602, 608.)

The same contentions as made here by appellees, in support of the decree entered below, were made in the case of *In re Bistany,* 239 N. Y. 19, and in answer thereto Mr. JUSTICE CARDOZO said: ''We see little, if any, significance in the failure to send money. A different case would be here if there had been the slightest reason to believe that contributions were either needed or expected. The child was with kind friends under the same roof as her aunt. The parents knew full well that the childless couple who had taken this little one into their home were moved by interest and affection, and were not looking for pay. We can hardly doubt that money, if tendered, would be scornfully returned. Unwise the Parents may have been in the acceptance of favors so unusual. They did not forfeit their parent-

hood in becoming recipients of bounty. . . . We have no thought to understate the case for the petitioners or the equities of their position. Undoubtedly, the inference is permissible and even necessary that father and mother were willing for the time being to leave the child with generous folk of ample means who were anxious to have her with them and to care for her as their own. More than that must be shown before this order may be disturbed. After the finding by the Appellate Division adverse to the petitioners, the order under review must stand unless we are prepared to hold that by acts so unequivocal as to bear one interpretation and one only the parents manifested an intention to abandon the child forever. They may have weakly hesitated. They may have foolishly delayed. They may have drifted into a situation in which their desires and expectations were open to misconception. They may have experimented a little, to test their own feelings. All that is not enough. They must be found to have renounced. The petitioners would have us hold what began, so to speak, as a loan, was thereafter transformed into a gift, and this though a readiness to give had been explicitly disclaimed. We cannot say that silence and inaction were prolonged to such a point that an intention to surrender becomes an inference of law.''

 We are convinced, after a careful study of all of the evidence in this record on the questions of abandonment and desertion, that such evidence falls short of showing that appellant either abandoned or deserted her child. This was the conclusion that the trial court originally reached.

It is next necessary to determine whether or not the additional grounds alleged in the amended petition of (a) depravity, or (b) open and notorious adultery or fornication have been proved. Depravity is defined in Webster's Universal Unabridged Dictionary as ''a dis-

274

position or settled tendency to evil; wickedness, corruption of moral principles." The evidence introduced by appellees on this question is relative to a pregnancy of appellant (whether real or imagined the evidence leaves in doubt) which occurred during the year 1947, to her efforts to obtain an abortion when she thought she was pregnant, and to her alleged improper relationship with a Mr. Vaughn, which occurred during the month of February, 1949. We have read the record but will not recount the evidence here as it would benefit no one.

██ A child born out of wedlock does not alone prove that the mother is a depraved person or that she is unfit to have the custody of her child. (*In re petition of Dickholtz*, 341 Ill. App. 400, 404.) We are not at all convinced from the testimony appearing in this record that the conduct of appellant is the result of an evil mind or sprung from a vicious, corrupt or base nature. As to the proof of any improper conduct between her and Mr. Vaughn, the evidence is highly unsatisfactory. As to her alleged pregnancy and attempted abortion in 1947, this is not enough in our opinion to constitute her a depraved person within the meaning of the statute.

██ There is considerable evidence in this record showing that appellant is a kind and affectionate person. She has practiced her profession as a nurse for nearly eighteen years without there being any professional blemish against her. During that time, she has successfully held several positions of responsibility. Her right as the natural parent of James Robert Stone cannot be terminated unless a clear and convincing case is made against her in strict compliance with the adoption statute (*Jackson v. Russell*, 342 Ill. App. 637), and this has not been done. The order appealed from must therefore be reversed.

*Order reversed.*