**WEDL, Adoption, In re.**

Probate Court, Preble County.

No. 17573. Decided August 4, 1952.

Warren E. Slifer, Germantown, for the petitioners.
Dye & Ernst, Eaton, for the parents.

232

## OPINION

By ZIEGEL, J.

The sole question before this Court is whether the natural parents of the child sought to be adopted have "willfully failed to properly support and maintain the child for a period of more than two years immediately preceding the filing of the petition," so as to come within the provisions of **subparagraph (B) (4)** of §8004-6 GC, which avoids the necessity of actual consent to adoption on the part of parents under such circumstances. Here the natural parents specifically refused to consent to the adoption and both of them appeared in Court with counsel and vigorously resisted the granting of the petition.

The essential facts as found by the Court reveal that Nancy Jo Schul was born on February 19, 1949 to Emily Caroline and Irvin Jacob Schul. At that time there were six other children in the Schul family, three of whom were mentally retarded. Realizing that another child would add considerably to the burdens already existing and appreciating the inadvisability of raising another child in the same household with those who were feebleminded, even before the birth of Nancy Jo discussion took place between the Schuls and the Wedls, the petitioners herein, Belva Wedl being a sister to Emily Schul, concerning the Wedls taking charge of the new baby. The Wedls were then and are still now childless. An arrangement was arrived at, with the result that several hours after the birth of the child she was turned over to the Wedls and has resided with them ever since. No discussion was had concerning payment of support by the Schuls and while apparently there was some talk of the eventual adoption of the child no conclusions were reached on this point. Specifically, it appears that Irvin Jacob Schul, Nancy Jo's father, was even reluctant about permitting the Wedls to keep her at all.

Thereafter these two families visited back and forth. Nancy Jo knew that the Schuls were her parents. Gradually disagreement concerning the child developed, with the result that several months before the petition for adoption was filed all contacts between these two families ceased. At no time did the Wedls request or seek any assistance from the Schuls, or try to get the Schuls to assume custody of her. It appears that during all of this time the Schuls were physically and

financially able to contribute to the support of Nancy Jo, although except for Christmas and birthday presents nothing was offered. As to the Wedls, it is evident that they provided an excellent home for the child and treated her as if she were their own.

From the above it is obvious that the Schuls have not personally supported or maintained the child, and that this personal failure continued for a period of in excess of two years prior to the filing of the petition for adoption. The question to be decided, however, is not whether the Schuls personally supported and maintained the child, but whether they **"willfully"** failed to properly support and maintain" her. The reported case law of Ohio is completely devoid of anything that might aid the Court to determine what the legislature meant by "willfully failed to properly support and maintain." A historical review of Ohio's various adoptions statutes and a search in other jurisdictions has, however, proved helpful.

Ohio's first adoption statute was passed in 1859 (56 Ohio Laws 82). This statute provided that the written consent of the parents of a child was a prerequisite to the adoption of that child by another unless, insofar as it applies to the factual situation in the case at bar, the parents had **"abandoned"** said child. This enactment became Revised Statutes Section 3137 and after 1910 §8024 GC; although it was amended several times in other respects (See 67 Ohio Laws 14, 1870; 93 Ohio Laws 117, 1898; and 102 Ohio Laws 305, 1911), the word "abandoned" remained without interruption from 1859 to 1921 when the statute was again amended (109 Ohio Laws 177), the number changed to §8025 GC, at which time all reference to the word "abandoned" was omitted. The 1921 Act spelled out the type of consent required much more completely than had any former act. The written consent of the parents was required except, in essence, (1) the parent or person awarded custody by the juvenile court might give consent if the juvenile court approved; (2) the parent awarded custody by a divorce decree could give consent if the divorce court approved; (3) the legal guardian could give consent if both parents were dead; (4) a certified institution having permanent custody acquired either by voluntary surrender or court commitment might also execute a written consent to the adoption. It may be noted in passing that under the facts in the instant case as applied to the 1921 Act the petition for adoption could not possibly have been granted.

It is also well to pause here and consider the effect of the word "abandon" as it appeared in the Ohio Adoption Act from 1859 to 1921. Again there is no reported Ohio case law definition in point. A survey of existing adoption statutes, how-

ever, reveals that this word "abandon" still appears in many of them in connection with avoiding the necessity of parental consent to an adoption, and there are numerous reported case law definitions on this point from other states, particularly in Illinois, Pennsylvania, and New York. The settled definition seems to be that abandonment of a child, within the meaning of the Adoption Act, imports any conduct on the part of a parent which evidences a settled purpose to forego all parental duties and relinquish all parental claim to the child. For a few of such cases, of which there are many, see: In re Cohen's Adoption, 279 N. Y. S. 427; Check v. White, — Ill. App. —, 91 N. E. 2d 640; In re Diana, 165 Pa. Super. 12, 67 A. 2d 751; In re Adoption of Susko, 363 Pa. 78, 69 A. 2d 132; Stalder v. Stone, 344 Ill. App. 266, 100 N. E. 2d 497. Specifically, it has been held that merely permitting a child to remain for a time undisturbed in the care of others is not such abandonment as would deprive a parent of the right to prevent adoption of such child since in such case abandonment must be "willful"; that is, accomplished purposely and deliberately, in violation of law. Truelove v. Parker, 191 N. C. 430, 132 S. E. 295. Further, a child left in the care and custody of another by its parents, without agreement or provision for its support, mere failure of the parents of the child, in the the care and under the custody of another, to contribute, while it is in such custody and care, to its support and maintenance, does not constitute abandonment. In re Kelly, 25 Cal. App. 651, 145 P. 156.

Applying the abandonment statutes and the adjudicated definitions to the instant case it is again obvious that the petition for adoption would have to be dismissed because of lack of parental consent. Under these definitions the Schuls have not "abandoned" the child. On the contrary they have kept close touch with it during all of the time that it has been with the Wedls. As a matter of fact the first sign of defection between these two families developed out of disagreement over the child. They have not evidenced any settled purpose to forego all parental duties and relinquish all parental claim to the child. The fact that the Schuls have not contributed to the support of the child is not a criterion for determining abandonment.

The Ohio Adoption Act reached its most severe point in 1921 when some positive prior act, either on the part of a court or in the voluntary surrender of a child to a certified institution by the parents was required before written parental consent to an adoption could be dispensed with. The 1921 Act continued without change until the passage by the legis-

lature of the new Probate Code in 1931, at which time the various adoption laws were incorporated in that Code. Former §8025 GC became §10512-11 GC (114 Ohio Laws 472). This 1931 enactment used the words "failed and refused to support the child for two consecutive years," and provided that if one parent so "failed and refused to support the child" the written consent of the other was sufficient; or if both of the parents so "failed and refused to support the child," the consent would be given by the juvenile court. Neither the word "willfully" nor the word "abandoned" is used here, but instead the word "refused" appears. Webster's New International Dictionary, Second Edition, defines "refuse" as "to decline to accept, to reject; to decline to submit to or undergo; to decline to do, give or grant." In other words, refusal is an active, as distinguished from a passive, concept. While a parent may "fail" to support a child by doing nothing, that parent cannot be said to have "refused to support a child unless he specifically declines to carry out a positive request or lawful order to support the child. The conjunctive "and" was used in the 1931 Act undoubtedly in its common sense, so that the words "failed and refused" must be read and considered together. Thus, under the 1931 Act as applied to the instant case, the Schuls cannot be said to have "failed and refused to support" Nancy Jo since at no time did the Wedls either request or direct them so to do.

Although a minor amendment occurred in 1939 (See 118 Ohio Laws 626), there was no significant change insofar as the determination of the present case is concerned until 1943 when the legislature decreed that the consent of the parents of a child to an adoption of that child would not be required if the parents had "willfully neglected"· the child for two years, in which case the Probate Court would certify the matter to the Juvenile Court for a hearing upon that question, the Juvenile Court to certify its findings back to the Probate Court. (See 120 Ohio Laws 434, which also changed the number to §10512-14 GC.) For the first time the word "willfully" appears in the Ohio Adoption Code. The very next session of the legislature again amended this section, this time to approximately its present form, the words "willfully neglected" being changed to read "willfully failed to properly support and maintain" and the intervention of the Juvenile Court being dispensed with. (See 121 Ohio Laws 448). The present act was passed in 1951 and, although there were a few insignificant amendments, amounted primarily to a recodification of existing law, the section number being changed to §8004-6 GC. (124 Ohio Laws, S. 65).

A survey of the language employed in these various Ohio adoption statutes plainly indicates that their express purpose is to protect the inherent rights of natural parents to their children, and to spell out specfically how those rights can be lost insofar as legal adoption of the child by outsiders is concerned. Adoption statutes, being in derogation of the common law which does not recognize adoption, should be strictly construed. While the language of the present act permits more latitude in determining when the rights of parents to their child have been lost so that their positive consent to an adoption of that child by another is not required, it does not open the door completely. The word "willfully" still appears to require a showing of something more than a simple failure properly to support and maintain. "Willful" has been defined by Ohio courts in other types of cases where the word is used in a statute, and a summary of these decisions indicates that the closest synonym is "intentional" or "an intentional omission of a duty." Rankine v. Penna. & O. Coal Co., 15 C. C. (ns) 17, 23 C. D. 349; **Saxton v. Seiberling, 48 Oh St 554,** 29 N. E. 179, as used in divorce statute it means intentional, purposely, designedly, **Hanover v. Hanover, 34 Oh Ap 483,** 171 N. E. 350.

In the light of these definitions, in the light of the historical development of Ohio's Adoption Act, it cannot be said under the facts of this case that the Schuls have "willfully (or intentionally) failed to properly support and maintain" their daughter Nancy Jo. Their failure consisted of the simple and excusable failure of not providing any financial assistance to the Wedls in the care of the little girl. On the other hand they kept in close touch with the Wedls and with Nancy Jo and were constantly assured that she was being well cared for. They stood ready at any time to perform their normal parental duties. Such conduct can neither constitute abandonment, or refusal to support, or willful neglect, or willful failure to properly support. The Schuls not having consented to the adoption of their daughter Nancy Jo by the Wedls and not having waived their rights to the child by any act or failure to act on their part, the petition for adoption must be dismissed.

It is with reluctance that the Court has arrived at this conclusion. The Wedls pass all of the tests for an excellent adoptive placement for Nancy Jo. Since her birth they have given her the only steady diet of love and care that she has known. All of the evidence indicates that her life with the Wedls would be much more happy, pleasant and profitable to her than it will be if she is returned to the Schuls. This

court, however, cannot arbitrarily set aside positive rules of law in favor of social theory. Ours is a government of law, not of men.