46

**CAMPBELL, Exr., Plaintiff, v. MUSART SOCIETY OF THE CLEVELAND MUSEUM OF ART et, Defendants.**

Probate Court, Cuyahoga County.

No. 496719.   Decided January 5, 1956.

Harold T. Clark, Edwin D. Williams, Vincent M. Arnold, Cleveland, for Musart Society and for The Cleveland Society for the Blind.

McAfee, Grossman, Taplin, Hanning, Newcomer & Hazlett, Cleveland, William A. McAfee, Russell C. Grahame, of Counsel, for The Musical Arts Association of Cleveland.

Baker, Hostetler & Patterson, Cleveland, Howard F. Burns, R. T. Sawyer, Jr., H. Stephen Madsen, of Counsel, for Western Reserve University.

Merkle, Campbell, Dill & Clarke, Cleveland, for the Executor.

Sickafoose & Creighton, Canton, for Belle Roseman et al.

Burt, Carson, Vogelgessang & Burt, Canton, for George E. Miller, etc. et al.

Clark & Arter, Jr., Marion, for Ohio Northern University.

Payton T. Jordan, Tampa 2, Florida, for Mrs. C. E. Roseman.

Van Aken, Whiting, Arnold & Nash, Cleveland, for Musart Society.

W. T. Smith, Cleveland, for Central National Bank of Cleveland, Trustee.

J. Melvin Andrews, Willoughby, for Maria Celeste Lloyd.

## OPINION

By MERRICK, J.

This is an action for construction of a will and for declaratory judgment of rights thereunder. A recital of facts is necessary for a better understanding of the issues raised and the conclusions reached in this opinion.

Charles Edward Roseman, Sr. executed his last will and testament April 8, 1952. He executed a codicil December 31, 1952. He died February 23, 1953, within a year of the executions of both will and codicil. At the time of his death, the only living person related by blood to the testator was Maria Celeste Lloyd, a minor then of the age of one year and three months. She was the issue of the testator's son, who had predeceased his father by eleven months. The will and codicil were both executed after the death of testator's son which is referred to in the will.

The estate left by the testator is large and after some specific bequests, there will remain a very substantial residuum. According to the terms of the will, one-half of this is to be divided equally between five charitable institutions, parties to this action.

The question presented here is not a factual one as there is substantially no dispute as to the occurrence or sequence of events. A legal problem does arise and calls for an interpretation and application of two Ohio statutes in effect at the time of the death of the testator:— the statute of **mortmain** and the legal rights section of the adoption code.

One event gives rise to this entire controversy. Three months before the death of the testator, his granddaughter and only lineal descendant was adopted by her stepfather who had married the testator's daughter-in-law after the death of the testator's son.

The mortmain statute is found in §2107.06 R. C., and, so much of it as is important here, reads as follows:—

"Bequest to charitable purpose.

"If a testator dies leaving issue, or an adopted child, or the lineal descendants of either, and the will of such testator gives, devises or

bequeaths such testator's estate, or any part thereof, to a benevolent, religious, educational, or charitable purpose, . . . . . such will as to such gift, devise, or bequest, shall be invalid unless it was executed at least one year prior to the death of the testator."

It is conceded that if the grandchild is considered to be a lineal descendant of her natural father, even after her adoption, then the mortmain statute quoted above would invalidate the charitable bequests in question. This squarely presents the question:—In what manner, if any, did the adoption affect the line of descendancy to this child? The answer must be found in whatever construction and application is made of the legal rights section of the adoption statutes which is now §3107.13 R. C. The pertinent portions of such section read as follows:—

"Legal rights after final decree of adoption. Except in the case of a natural parent married to the adopting parent, the natural parents, if living, shall be divested of all legal rights and obligations due from them to the child or from the child to them . . . . . . For all purposes under the laws of this state, including without limitation all laws and wills governing inheritance of and succession to real or personal property and the taxation of such inheritance and succession, a legally adopted child shall have the same status and rights, and shall bear the same legal relationship to the adopting parents as if born to them in lawful wedlock and not born to the natural parents; provided: (A) Such adopted child shall not be capable of inheriting or succeeding to property expressly limited to heirs of the body of the adopting parents: (B) In case of adoption by a stepfather or stepmother, the rights and obligations of the natural parent who is the spouse of the adopting stepparent shall not in any way be affected by such adoption. * * * * * For the purpose of inheritance to, through and from a legally adopted child, such child shall be treated the same as if he were the natural child of his adopting parents, and shall cease to be treated as the child of his natural parents for the purposes of intestate succession."

The statutes of descent and distribution are not to be construed and administered upon equitable principles, but by rules of law. Courts cannot, by reason of any real or imagined equities, qualify or annul rights granted by legislative enactment. In other words, the general assembly must be held to have intended to express its entire meaning by the import of the words used. The laws of descent are mere arbitrary rules for the transmission of property, enacted by the legislature. and cannot be modified by courts by reason of equitable considerations. **14 O. Jur., 104, McCammon v. Cooper, 69 Oh St 366.**

A legislative enactment repealing or changing the course of descent and distribution of property and the right to inherit or transmit property, is not an unlawful interference with or deprivation of vested rights, and, unless expressly inhibited by constitutional provision, is to be deemed valid. **Ostrander v. Preece, 129 Oh St 625.**

The right to make a disposition of property by will is neither a natural, nor, in the United States, a constitutional right. It is solely the product of statutory enactment. The testamentary privilege, and its extent and limitation, depend wholly upon statute, not only as to their existence, but as to the mode in which it may legally be exercised.

As the legislature confers the power, so the legislature may restrain its operation, confine it to particular classes of persons, or abolish it altogether, so far as the wills of the persons who die after the enactment of the statute are concerned. 1 Underhill on Wills, 23, Section 16.

Of course the General Assembly cannot perform the impossible by creating a child of one's blood out of a stranger, but it possesses the power to fix the legal status of individuals and the manner in which they shall be treated with respect to the devolution of property. **Flynn v. Bredbeck, 147 Oh St 57.**

The **mortmain** statute is an exception to the right of testamentary disposition. It renders void that which but for its enactment would be vital. It is destructive in purpose and effect. It must consequently be given a strict construction. The purpose of the section is clear. It is to prevent a testator, under the fears incident to impending death, from disposing of his estate to the prejudice of his descendants. Zollmann on Charities, Section 506. **Ruple v. Hiram College, 35 Oh Ap 11.**

The Legislature has the power to declare the legal status of an adopted child and to make him capable of inheriting from the adopting parent. These provisions of the statutes creating the rights of inheritance between the parties to an adoption and the provisions of the law of descent and distribution of intestate estates are in **pari materia** and should, therefore, be construed together as one law. **Cochrel v. Robinson, 113 Oh St 533.**

The word "issue" has several meanings in the law of descent and distribution, and what its meaning may be in a given case depends upon the circumstances under which it is used, whether it be found in a will, a contract or statute. Its primary signification imports descendants and has to do with the blood of the ancestor, but by general use the word "issue" has often a wider signification and may include adopted children. A child, legally adopted under the laws of Ohio, is included within the meaning of the word "issue." **Miller v. Shepard, 29 Oh Ap 22, Rodgers v. Miller, 43 Oh Ap 198.** Cochrel v. Robinson, supra.

Adoption statutes, being in derogation of the common law, which does not recognize adoption, should be strictly construed. **In re Wedl, 65 Abs 231.**

On June 14, 19. 3, the Supreme Court of Ohio decided the case of **In re Estate of Friedman, 154 Oh St 1.** In that case the court held that the inheritance tax statutes which place distributees in estates in certain categories are not in **pari materia** with the legal rights section of the adoption statutes. The court held that there was a difference in classification between an adopted child and a lineal descendant so far as the taxation statute was concerned and adhered to a strict construction holding that one did not include the other. The opinion of the court concludes with this observation:—"Of course, the General Assembly could amend the succession tax statute so as to give an adopted child of a child of a decedent the same succession tax status as a child of the blood of the decedent, but upon full consideration of the statutes involved, as herein reviewed, this court is of the opinion that it has not done so."

Whether inspired by this decision, or not, the next session of the

Legislature amended the legal rights section of the adoption code and inserted these very important words:—

"**Sec. 3107.13 R. C.** . . . . . For all purposes under the laws of this state, including without limitation all laws and wills governing inheritance of and succession to real or personal property and the taxation of such inheritance and succession, a legally adopted child shall have the same status and rights, and shall bear the same legal relationship to the adopting parents as if born to them in lawful wedlock and not born to the natural parents . . . . .."

This amendment to the statute was considered and interpreted by Judge Richmond of Geauga County, sitting in this court by assignment in the case of Frantz v. Florence, Probate Court No. 498130. In his decision under date of October 13, 1954 in that case, Judge Richmond found that this language of the code precludes a child who has been adopted into another family from inheriting from his natural kin, and that the child could have no interest as such in the estate of his grandfather. He further held that an adopted child ceases to be the child of his natural parents for the purpose of each and every possibility of inheritance under the statute of Descent and Distribution; that the Blood line is completely severed and that the child, as such, is precluded from inheriting a share of his grandfather's estate under the law.

Coming now to a correlation of the theories herein discussed, this court is of the opinion that considering the **mortmain** statute and legal rights section of the adoption statute in **pari materia** and strictly construing those sections as they existed at the time of the death of Charles E. Roseman, Sr., there can be but one conclusion:—that the testator died without issue or the lineal descendant of issue and that the charitable bequests are valid and effective as set out in the will and codicil. A decree may be prepared accordingly and the costs will be adjudged against the estate.