IN RE ADOPTION OF ANTHONY ET AL.

(No. 81AP-907—Decided May 13, 1982.)

Thomas M. Tyack & Associates Co., L.P.A., and Mr. Thomas M. Tyack, for appellees.

Messrs. Pees & Behal and Mr. Robert J. Behal, for appellant.

NORRIS, J. Stephen Arick, Sr., appellant herein, appeals from a judgment entry of the Probate Division of the Court of Common Pleas of Franklin County, which held that his consent was not required for the adoption of his minor children, Stephen and Kelly, by their stepfather. The children's mother, Arick's former wife and now wife of the petitioner, Fred Anthony, had consented to the adoption.

On March 19, 1981, Anthony filed a petition seeking to adopt the children, and, in it, alleged that Arick's consent was not required because he had failed without justifiable cause to communicate with the children, or to provide for their support, for a period of at least one year immediately preceding the filing of the petition. Because Arick contested the adoption, a record hearing was conducted before a referee, on June 9, 1981, to determine whether or not Arick's consent was required.

Arick testified that, after his marriage to the children's mother was terminated, he was often thwarted in the exercise of the visitation privileges granted

him by the dissolution decree; that there had been numerous physical altercations between Anthony and himself when he tried to obtain the children for his scheduled visitations; that on one occasion he had just returned the children when Anthony told him that he and the children's mother were to be married and that he wanted Arick to come inside so that they could discuss a better relationship and Anthony could "make it right"; that, in reliance upon this representation, he followed Anthony into the house, whereupon he was attacked by Anthony and his four brothers who kicked and beat him until he passed out; that, when he came to, he was told "This is a warning that you don't come back. * * * They are Fred's kids now."; that, after that occurrence, he took a police officer along when he attempted to visit with the children; that the last time he saw his children on regular visitation was several weeks after Thanksgiving of 1979; that subsequently to that time he gave up trying to see the children because his attempts to do so had been thwarted by Mr. and Mrs. Anthony, and that on some of those occasions Anthony had precipitated fights with him in the presence of his children; that, about that time, he also stopped paying child support[1] because he was not allowed to see his children and he thought he was fighting back; that the last time he had seen his children was on a chance occasion during the summer of 1980 when he was picnicking at Blendon Woods and encountered his children and visited with them briefly; that, in early February of 1981, he decided he should resume support payments, and voluntarily presented himself at the Bureau of Support and agreed to a payroll deduction of child support; and that the first deduction was made from the paycheck he received several days later.

The referee's report, finding that the adoption could proceed without Arick's consent, includes this language:

"At the conclusion of the hearing, this Referee was satisfied that the testimony and documents stipulated to were sufficient evidence to establish that the natural father had not communicated with or supported his child [sic] as required by O.R.C. Sec. 3107.07(A). The sole issue before this court is whether the natural father had 'justifiable cause' for his non-compliance with the statute.

"* * * Much of the natural father's testimony at the hearing dealt with the alleged violence on the part of the Petitioner which deterred the natural father from communicating with and supporting his children. The Petitioner testified that although there was some violence between he [sic] and the natural father, it was usually initiated by the natural father. This contradictory testimony begs the question since the proper forum for resolution of this problem between the Petitioner and the natural father is the Court of Common Pleas, Division of Domestic Relations. * * *

"The natural father has not met his burden to demonstrate justifiable cause for his failure to communicate with or support his children during the year preceding the filing of the adoption petition. * * * After considering all the evidence and testimony, this Referee finds that clear and convincing evidence was presented to support a finding that the natural father has failed without justifiable cause to communicate with or support these two children for a period of at least one year preceding the filing of the adoption petition. * * *"

The probate judge approved the report and entered it as his decision, noting only that no objections had been filed to the report.

---

[1] According to exhibit 2, a child support payment was recorded by the support bureau on December 3, 1979, and the next subsequent payment was recorded on March 3, 1981.

Arick raises two assignments of error:

"1. The Court erred prejudicially by finding that Respondent had unjustifiably failed to communicate with his children for one year immediately preceding the filing of the petition, when such finding was against the manifest weight of the evidence.

"2. The Court erred prejudicially as a matter of law by finding that Petitioner failed to support his children for a period of one year immediately preceding the filing of the Adoption Petition when the records stipulated to at trial indicate that several payments were made just prior to the filing." ["Petitioner" *sic.*]

Because the issues raised by the assignments of error are interrelated, we will combine them for the purpose of discussion. The statute prescribing the standards under which a parent's consent may be dispensed with is R.C. 3107.07:

"Consent to adoption is not required of any of the following:

"(A) A parent of a minor, when it is alleged in the adoption petition and the court finds after * * * hearing, that the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding * * * the filing of the adoption petition * * *."

As applicable to the circumstances of this case, R.C. 3107.07(A) provides that the consent by a parent to the adoption by another of his minor child is not required when the petition for adoption alleges, and the trial court finds, that:

(1) the parent has failed to either
    (a) communicate with the child, or
    (b) provide for the maintenance and support of the minor child as required by law or judicial decree;
(2) without justifiable cause;
(3) for a period of at least one year immediately preceding the filing of the petition.

It is apparent from the language of the statute that the General Assembly has endeavored to enact an objective test against which probate courts might measure the degree to which a parent must have voluntarily abandoned his parental responsibility as a condition precedent to his having forfeited his parental rights. Because the statute provides for cutting off the statutory right of a parent to withhold his consent to the adoption of his child by another, and is in abrogation of the common-law rights of natural parents, the provisions of the statute must be strictly construed to protect the rights of the natural parent. See *In re Schoeppner* (1976), 46 Ohio St. 2d 21, at 24 [75 O.O.2d 12]; *In re Adoption of Peters* (1961), 113 Ohio App. 173, 176 [17 O.O.2d 141]. The trial court's finding must be grounded upon clear and convincing evidence. *In re Adoption of Ash* (July 2, 1974), Franklin App. No. 74AP-42, unreported.

Under the clear language of the statute, when the trial court addresses the requirement that the failure to communicate or support must be without justifiable cause, no burden is to be placed upon the non-consenting parent to establish that his failure was justifiable. The requirement is not framed in terms of avoidance, but, instead, is written in terms of proof of petitioner's allegations. Were our resolution of this appeal to turn on the existence or absence of justifiable cause, then the referee's having required of the father the burden of demonstrating justifiable cause would constitute sufficient error to require reversal.

However, we sustain the assignments of error on other grounds. Under the statute which existed before enactment of R.C. 3107.07(A), the requirement was that the non-consenting parent "properly" support and maintain the child. Former R.C. 3107.06(B)(4). While that modifier was omitted by the General

Assembly in enacting R.C. 3107.07(A), there is authority for the proposition that even under the former statute there had to be a complete failure to support and maintain during the then specified two-year period immediately preceding the filing of the petition. See *Johnson* v. *Varney* (1965), 2 Ohio St. 2d 161 [31 O.O.2d 316]; *In re Adoption of Costakos* (Aug. 21, 1973), Franklin App. No. 73AP-133, unreported. Strictly construing the present statute to protect the interests of the non-consenting parent, we conclude that the General Assembly intended that so long as the parent complies with his duty to support the child for any period during the one year immediately preceding the filing of the petition, then he has not failed to provide support as required by law, or judicial decree, for one year. Under those circumstances, the parent will not have abandoned his parental responsibilities to the extent that he will be deemed to have forfeited his parental rights.

Here, it is uncontroverted that Arick made the payments specified by the prior order of the Domestic Relations Court for at least four weeks prior to the filing of the petition.[2] It was not contended that the amounts of support ordered by the Domestic Relations Court were not sufficient to satisfy the father's common-law duty to support his children. Accordingly, if the referee concluded, in finding that Arick had failed to support the children, that Arick was required to have provided more than the four weeks' support which the parties agreed was received prior to the filing of the petition, then the referee erred as a matter of law in construing the statute. If he ignored the uncontroverted evidence, then his finding was against the manifest weight of the evidence.

The clear language of the statute requires that, in order for there to be a failure of communication, there must have been a complete absence of communication for a period of at least one year immediately prior to the filing of the petition. Anthony, his wife, and Arick, all agreed that Arick had visited with the children at Blendon Woods during the summer of 1980. The referee's finding that he had failed to communicate with the children was therefore either contrary to the manifest weight of the evidence, or contrary to law.

In view of the referee's error in finding the existence of one of the elements required by the statute, we need proceed no further in our analysis. However, because the referee misapprehended the proper application of the "without justifiable cause" element of the present statute, we are constrained to comment on that requirement as it was not found in the former statute.

The referee apparently believed that the testimony which supported the father's contention that any failure on his part was not without justifiable cause, in view of the conduct of Anthony and his wife in thwarting the exercise of visitation privileges, was irrelevant because Arick had not sought to enforce visitation during the year previous to the filing of the adoption petition by filing proceedings in the Domestic Relations Division of the Court of Common Pleas.

The referee erred in this conclusion. While Arick's failure to bring enforcement proceedings would have a bearing in testing the credibility of his testimony concerning his reason for not having visited with his children, the referee was required to consider the evidence of the conduct of Anthony and his wife in determining whether or not it constituted justification for any failure of the father to support or communicate.

If the referee's approach were to be

---

[2] If the father's testimony is believed, then the support bureau actually received the payment which it credited to his account on March 25, 1981, prior to the filing of the petition, and the total period of compliance prior to the filing of the petition was six weeks.

followed, a stepfather and natural mother could persist in clearly outrageous and unlawful conduct in order to prevent a father from communicating with his children, thereby "bootstrapping" themselves into a position where the father's consent was not required to an adoption by the stepfather, so long as the father failed to undertake the expense of obtaining a court order requiring them to terminate their unlawful conduct. Under those circumstances, the probate court would be rewarding their unlawful conduct. Clearly, the General Assembly did not contemplate so absurd a result when prescribing the "without justifiable cause" standard.

If Arick's testimony is believed concerning his having been lured by Anthony into his home on the pretext of settling their differences, and his then having been set upon and severely beaten by Anthony and his four brothers for the purpose of convincing Arick never to return, then the trial court had before it conclusive evidence that the father was justified in his failure to communicate with his children so long as they resided in petitioner's residence. Anthony admitted that the altercation took place and his involvement in it, and did not deny Arick's contention that Anthony and his brothers set upon Arick without provocation and threatened him with a repeat performance if he ever returned. Nor did Anthony contradict Arick's testimony that on subsequent occasions when he attempted to visit with his children he was accompanied by a police officer, and that he sometimes was denied visitation even when in the company of an officer.

Even if the trier of the facts were to disbelieve Arick's testimony concerning other altercations, and believe Anthony's testimony that Arick provoked those altercations, the conclusion might still be unavoidable that the father was justified in failing to communicate subsequently to those altercations, since there is an absence of evidence that he provoked those altercations in a deliberate effort to avoid communicating with his children. The trier of the facts would still be left with a situation where the petitioner admitted that affrays resulted when the father tried to visit with his children. If Anthony were acting in good faith not to prevent visitation, then his knowledge of the history of past friction would require that he absent himself when Arick exercised his visitation privileges.

Accordingly, we doubt that there is any basis in the record upon which the trial court could conclude by clear and convincing evidence that any failure by the father to communicate with his children was without justifiable cause.

And, under circumstances where a parent has been continuously or repeatedly prevented from exercising his right to visit his children, a trial court would be warranted in not finding that the parent's failure to pay support was without justifiable cause. See, *e.g.,* R.C. 3109.05.

Because the trial court erred in finding that the father's consent was not required, the assignments of error are sustained, and the judgment of the trial court is reversed.

*Judgment reversed.*

REILLY and MOYER, JJ., concur.