WILLAMOWSKI, J.
{¶ 1} Father-appellant Michael E. Brunswick ("Michael") appeals the judgment of the Probate Division of the Court of Common Pleas of Van Wert County for finding that Michael's consent was not necessary for his daughter, SS, to be adopted by SS's mother's husband, Wesley A. Sweigart ("Sweigart"). On October 31, 2016, Sweigart submitted a petition to adopt SS that alleged Michael's consent was not necessary for this adoption, claiming that Michael had not had more than de minimis contact with SS for one year prior to the filing of this petition. For the reasons set forth below, the judgment of the lower court is reversed.
Facts and Procedural History
{¶ 2} SS is the daughter of Michael and Stephanie L. Hogenkamp ("Stephanie").[1] Doc. 1. SS has lived with her mother, Stephanie, in Van Wert County since May 1, 2015. Tr. 2-3. Throughout SS's childhood, Michael has paid child support pursuant to a court order that was issued in Mercer County. Doc. 9. However, no court order was issued that governed Michael's visitation rights. Tr. 3, 7. Rather, Michael worked out his schedule for visitation through verbal agreements with Stephanie. Tr. 4, 8. According to the testimony of both parties, Michael was able to visit SS regularly through the fall of 2015. Tr. 4. In 2015, however, Stephanie moved in with Wesley Sweigart ("Sweigart"), who is now her husband, and is the petitioner in this case seeking to adopt SS. Tr. 31. Doc. 1. Shortly after Stephanie moved in with Sweigart, Michael's pattern of visitation began to change. Tr. 4, 26. At this point, Stephanie's description of events begins to contradict Michael's description of events. Tr. 4, 27, 52. At trial, each party provided different reasons for why Michael's pattern of regular visitation was interrupted. Tr. 4, 27.
{¶ 3} When Michael testified, he began by explaining that he and Stephanie had no formal court order governing his visitation rights. Tr. 25-26. Initially, he and Stephanie had a verbal agreement that he could see SS "whenever [he] wanted to see her." Tr. 26. In 2014, however, Michael got a trucking job that required him to be gone for up to thirty days at a time. Tr. 26. While he had this job, he would take SS for the week each month in which he was not traveling for his job. Tr. 26. In 2015, he got a job where he worked daily in Waynesfield, Ohio. Tr. 26. During this time, he visited SS frequently during the week and on weekends as SS and Stephanie *529 lived under two miles away from his house. Tr. 32-33. However, when Stephanie moved to Van Wert in May of 2015 to live with Sweigart, SS began to stay with Michael every other weekend. Tr. 26-27. He testified that it was harder to visit SS during the week since she lived in Van Wert and he lived in Celina. Tr. 32-33. Under this arrangement, he would get to pick up his daughter every other Friday and spend time with her over the weekend before dropping her off at Stephanie's house on Sunday evening. Tr. 26-27.
{¶ 4} This pattern of seeing SS every other weekend continued until the fall of 2015. Tr. 32. Michael testified that he had SS for the first weekend of October in 2015. He testified that he had SS for a weekend in November but did not get SS for a second weekend in November because his weekend fell close to the Thanksgiving holiday, and Stephanie had family engagements for SS that weekend. Tr. 26. Michael testified that he moved to Waynesfield, Ohio in early December. Tr. 29. Michael also testified that he had SS for a weekend in early December shortly after he moved to Waynesfield. Tr. 28.
{¶ 5} At this point, Michael's attorney introduced a picture of Michael with SS that had been uploaded onto Facebook on December 10, 2015. Sweigart's attorney pointed out that the date on the Facebook page did not indicate that this picture was taken on that date and could have been taken long before the date on which the picture was uploaded. Tr. 47-49. However, Michael explained that this picture was taken in the house he had moved into in December 2015 and demonstrated that SS had been with him after October 4, 2015. Tr. 35. Michael did not get SS for a second weekend in December because his next scheduled weekend to be with SS fell on Christmas, and Stephanie would not allow him to take SS over the holiday. Tr. 26.
{¶ 6} Michael then testified that the last time he had SS was the weekend of January 8-10, 2016. Tr. 27. Michael said that he was scheduled to get SS on the weekend of January 22-24, 2016. Tr. 26. However, on January 22, 2016, he received a text message from Stephanie that said he "could not have her [SS] until I got an attorney." Tr. 26. Michael subsequently sought legal representation, but this process was delayed by the fact that he had to save up money to afford an attorney. Tr. 27. He testified that he did not have the funds to retain an attorney after he paid for his move to Waynesfield, Ohio and Christmas presents. Tr. 27.
{¶ 7} In between January of 2016 and the hearing, Michael testified that he had some contact with SS. In May of 2016, he texted Stephanie on SS's birthday to see if Stephanie would allow him to talk to his daughter. Stephanie returned his text with a phone call, and Michael was allowed to speak to his daughter for five minutes on her birthday. Tr. 29-30. On Sweetest Day in 2016, Michael also sent a flower to SS at school. Tr. 33. Stephanie admitted during her testimony that SS did come home from school one day in 2016 with a flower and a stuffed animal on Sweetest Day. Tr. 8-9.
{¶ 8} By September 2016, Michael had obtained legal representation. Tr. 27-29. He testified that the process of getting legal representation was not completed until a payment plan was worked out with his attorney. Tr. 28. On September 30, 2016, Michael filed a motion for shared parenting in the Mercer County Juvenile Court. Tr. 31. This document also requested an order that would govern visitation going forward. Tr. 31. Specifically, Michael asked for the right to see his daughter every other weekend during the school year and to have his daughter every other week when school was out of session in the summer time. Tr. 31-32. During her testimony, *530 Stephanie claimed that she did not receive notice of the Mercer County action prior to Sweigart filing to adopt SS. Tr. 15. However, a copy of the filing was introduced during the hearing that had a timestamp indicating that the motion had been filed on September 30, 2016. Tr. 32.
{¶ 9} When Stephanie testified at the hearing, she presented a different timeline from the one offered by Michael. Stephanie testified that the final contact that Michael had with SS was on October 4, 2015. Tr. 4. Stephanie also testified that the final time Michael contacted Stephanie was on the day he was supposed to get SS for his second weekend in October. Tr. 4. Michael texted Stephanie, saying, "[W]hen am I getting my daughter." Tr. 9. She responded by telling Michael that they "would talk when he had a lawyer." Tr. 10.
{¶ 10} Stephanie then clarified that comment by saying, "I didn't say I wouldn't speak to him. I just said that we weren't going to talk about it right that minute because he was just being completely rude to me by saying when am I getting my daughter. We had always referred to her as ours." Tr. 10. She admitted that she had the ability to dictate when Michael could see SS. Tr. 10, 11. She attempted to clarify her statement about Michael getting a lawyer, saying that this discussion meant that "[w]hen he got a lawyer * * * he and I would talk. I never said he couldn't have her [SS]." Tr. 11.
{¶ 11} On October 31, 2016-which was one month after Michael had filed a motion for shared parenting with the Mercer County Juvenile Court on September 30, 2016-Sweigart filed a petition to adopt SS. Doc. 1. Tr. 32. The petition claimed that Michael's consent to the adoption was not necessary, alleging that Michael had not had more than de minimis contact with SS for one year prior to the filing of Sweigart's petition for adoption. Doc. 1. The hearing on this matter was held on January 4, 2017. Doc. 9. On April 13, 2017, the trial court issued a judgment entry that determined Michael's consent was not necessary for the adoption of SS by Sweigart to proceed. Doc. 13. The judgment entry began with several initial findings. The trial court found that no allegation was made that Michael failed to provide child support, that SS received a flower from Michael on Sweetest Day in 2016, and that Stephanie texted Michael on January 22, 2016, saying that "he could not see the child until he had an attorney." Id. The trial judge noted that Michael and his girlfriend, Linessa Falor, testified that the last date on which SS stayed with Michael was January 10, 2016. Id. The trial judge also noted that Stephanie and her husband, Sweigart, testified that the last time SS stayed with Michael was October 4, 2015. Id.
{¶ 12} The trial court then addressed the two key issues that determined whether Michael's consent was necessary. First, the trial court found that Michael had not visited SS since October 4, 2015, determining that Stephanie's testimony was more credible. Id. Since the action for adoption was filed by Sweigart on October 31, 2016, the trial court thus determined that Michael failed to communicate with SS for one year prior to the filing of the adoption paperwork, making his consent unnecessary for the adoption to proceed. Id. The trial court characterized the Sweetest Day gift and birthday call to SS to be de minimis contact. Id. Second, the trial court found that the mother did not cause significant interference to Michael's ability to visit his daughter. Id. The trial court further stated that it did not consider Stephanie's "unusual request" that Michael get an attorney to be an obstacle that would justify Michael in not having more than de minimis contact with his daughter in between *531 October 4, 2015 and October 31, 2016. Id.
{¶ 13} On May 12, 2017, Michael filed a notice of appeal. In his appellate brief, he raises the following four assignments of error:
First Assignment of Error
The trial court erred by not taking into account for its final decision that the Father-Appellant had been supporting the child.
Second Assignment of Error
The trial court erred in not holding that the filing of the motion by the appellant in the Mercer County Case was not in fact an attempt by the Appellant to have contact with S.S. within the year prior to Appellee's filing of his petition to adopt.
Third Assignment of Error
The trial court erred and abused its discretion in determining that the Father-Appellant did not have more than de-minimis contact with the minor child for more than a year preceding the filing of the Petition to Adopt by the Petitioner-Appellee.
Fourth Assignment of Error
The trial court erred in finding that the mother's interference with contact between Father-Appellant and child was not significant interference.
For the purposes of analytical clarity, we will consider the second and fourth assignments of error together. We will then consider the first and third assignments of error.
Second and Fourth Assignments of Error
{¶ 14} In his second assignment of error, Michael asserts that the trial court failed to consider the filing of his motion for shared parenting with the Mercer County Juvenile Court as an attempt to contact SS. He argues that the trial court erred in allowing the adoption process to proceed while another action, which was filed prior to the petition for adoption and directly addressed the parenting of SS, was pending in another court. Further, Michael contends that he was denied the ability to visit with SS and was, in filing this action, exercising his only option to regain the ability to have visitation with his daughter. Since this motion was filed within one year of his final visitation with SS,[2] he believes that the trial court erred in concluding that the adoption could proceed without his consent.
{¶ 15} In his fourth assignment of error, Michael argues that the trial court erred in determining that Stephanie's interference in this case was not significant. He points to the fact that Stephanie controlled all access to SS as there was no court order in place that governed visitation. He then points to the fact that Stephanie conditioned future visitation with SS on Michael obtaining an attorney and to the fact that he complied with this condition, proceeding to file an action with the Mercer County Juvenile Court on September 30, 2016. In this argument, Michael also notes that Stephanie's testimony alleged that she told him to get an attorney in late October 2015, which terminated his visitation with SS, and that her husband, Sweigart, filed a petition for adoption just over one year after visitation was terminated. Michael argues that these factors, when considered together, show that Stephanie's interference was significant. We will consider the *532 subject matter of both of these assignments of error in one analysis.
Legal Standard
{¶ 16} Under most circumstances, both of a minor's natural parents must provide written consent prior to the adoption of that minor. In re Adoption of K.C. , 3d Dist. Logan No. 8-14-03, 2014-Ohio-3985, 2014 WL 4555908, ¶ 20. However, R.C. 3107.07(A) provides the following exception to this general rule:
Consent to adoption is not required of any of the following:
(A) A parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.
R.C. 3107.07(A). The application of R.C. 3107.07(A) requires a two-step analysis. See In re Adoption of M.B. , 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142, ¶ 23.
The first step involves deciding a factual question-in this case, whether the parent willfully had failed to provide more than de minimis contact with the minor child. "A trial court has discretion to make these determinations, and in connection with the first step of the analysis, an appellate court applies an abuse-of-discretion standard when reviewing a probate court decision * * *." In the second step, if a probate court finds a failure to provide more than de minimis contact, the court then determines the issue of whether there is justifiable cause for the failure. A probate court's decision on whether justifiable cause exists will not be disturbed on appeal unless the determination is against the manifest weight of the evidence.
(Citations omitted.) K.C. at ¶ 23, citing In re Adoption of Masa , 23 Ohio St.3d 163, 492 N.E.2d 140 (1986), paragraph two of the syllabus and M.B. at ¶ 23-26.
{¶ 17} "Significant interference, or significant discouragement, in the communication between the non-custodial parent and the child by the custodial parent establishes justifiable cause for the non-custodial parent's failure to communicate with the child." In re J.D.T. , 2012-Ohio-4537, 978 N.E.2d 602, ¶ 25 (7th Dist.), citing In re Adoption of Holcomb , 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985). The language of R.C. 3107.07"indicates that the legislature intended to adopt an objective test for analyzing failure of communication '* * * against which probate courts might measure the degree to which a parent must have voluntarily abandoned his parental responsibility as a condition precedent to his having forfeited his parental rights.' " Holcomb at 366, 481 N.E.2d 613, quoting In re Adoption of Anthony , 5 Ohio App.3d 60, 62, 449 N.E.2d 511 (1982).
{¶ 18} "[T]he right of a natural parent to the care and custody of his children is one of the most precious and fundamental in law." Masa at 164, 492 N.E.2d 140, citing Santosky v. Kramer , 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). "Few consequences of judicial action are so grave as the severance of natural family ties." In re Adoption of P.A.C. , 126 Ohio St.3d 236, 2010-Ohio-3351, 933 N.E.2d 236, ¶ 6, quoting Santosky at 787, 102 S.Ct. 1388 (Rehnquist, J., dissenting). In applying the provisions of *533 R.C. 3107.07(A), "we are properly obliged to strictly construe this language to protect the interests of the non-consenting parent who may be subjected to the forfeiture or abandonment of his or her parental rights." Holcomb at 366, 481 N.E.2d 613, citing In re Adoption of Peters , 113 Ohio App. 173, 177 N.E.2d 541 (1961) ; In re Schoeppner , 46 Ohio St.2d 21, 24, 345 N.E.2d 608 (1976).
Legal Analysis
{¶ 19} In this case, several factors lead us to the conclusion that the trial court erred in determining that Michael's consent was not necessary for the adoption of SS to proceed. We begin our analysis by noting that the Mercer County Juvenile Court issued a child support order but did not issue an order governing visitation. In the absence of a court order, the visitation rights of the noncustodial parent are left entirely in the hands of the parties. Further, under such an arrangement, the custodial parent will necessarily have a large measure of control over the visitation rights of the noncustodial parent. Since this arrangement leaves the custodial parent with wide latitude to determine the rights of the noncustodial parent, a similar degree of latitude should be recognized for the noncustodial parent if any conditions are imposed on visitation by the custodial parent. In such circumstances, the trial court should consider whether evidence was presented that shows that the noncustodial parent made efforts to comply with the condition that was imposed by the custodial parent on visitation. In this case, the trial court did not consider any of these issues as it determined whether Michael had communicated with SS in the year leading up to the filing of Sweigart's petition for adoption. We proceed now to address these issues.
{¶ 20} In this case, according to the testimony of both parties, Stephanie and Michael were able to cooperate in the absence of an order governing visitation until shortly after Stephanie moved to Van Wert to live with Sweigart in May of 2015. Tr. 3-4, 26. After this point, the testimony of each party provides a different version of events. Sweigart and Stephanie allege that Michael did not engage in more than de minimis contact with SS for one year prior to the filing of the petition for adoption on October 31, 2016. Tr. 16, 21. Stephanie testified that the last time Michael was with SS was on October 4, 2015. Tr. 4. Michael, on the other hand, testified that the last time he had been with SS was on January 10, 2016. Tr. 26.
{¶ 21} Both parties testified that Stephanie told Michael he needed to obtain legal representation before his next visit with SS was scheduled. Tr. 9, 11, 29. While each party provided different dates for Michael's last visit with SS, both parties, in their testimony, stated that Stephanie instructed Michael to retain an attorney roughly two weeks after his last visit with SS, making this an undisputed fact.[3] Tr. 9- *534 11, 26. Thus, if Michael's testimony is to be believed, this places the imposition of the condition on January 22, 2016. If Stephanie's testimony is to be believed, the imposition of the condition occurred on October 16, 2015.
{¶ 22} In its judgment entry, the trial court relied upon Stephanie's testimony and, as a consequence, found that the final date that Michael had SS was on October 4, 2015. Doc. 13. For some reason, however, the trial court also found that Stephanie told Michael to obtain legal representation on January 22, 2016. Id. If the date provided by Stephanie for the final visit Michael had with SS is correct and both parties agree that Stephanie told Michael to retain an attorney two weeks after Michael's final visit with SS, this would place the conversation between Michael and Stephanie concerning legal representation in October 2015. Thus, the determination that January 22, 2016 was the date on which Stephanie told Michael to get an attorney is inconsistent with the trial court's other findings.
{¶ 23} Since it is an undisputed fact that the conversation in which Stephanie told Michael to obtain legal representation occurred within two weeks of Michael's final visit with SS and the trial court determined that the final visit Michael had with SS was on October 4, 2015, we will proceed in our analysis with the understanding that Stephanie's condition was imposed on Michael on October 16, 2015. Tr. 11-12, 26. Under a proper legal analysis of the information contained in the record, the date on which this condition was imposed is no insignificant fact. Sweigart filed his petition for adoption one year and twenty-seven days after the final date Michael had been with SS-according to Stephanie's testimony-making a small change in events of great consequence in determining whether one full year had transpired since Michael's last communication with SS. Doc. 1.
{¶ 24} In its judgment entry, the trial court determined that Michael did not have more than de minimis contact with SS for over one year prior to Sweigart filing his petition to adopt SS. Doc. 13. From the judgment entry, it appears that the trial court treated October 4, 2015, as the point at which this one-year period began. Id. Pinpointing October 4, 2015, as the moment at which the one-year period began is an error. The testimony from both parties indicates that Stephanie told Michael that he needed to obtain legal representation on the day that he was supposed to pick up SS for the weekend. Tr. 11, 26. From the testimony, it is apparent that Michael intended to spend time with SS that weekend. Tr. 26. On October 16, 2015, Stephanie, according to her testimony, prohibited Michael from seeing his daughter, defeating his attempt to make contact with SS. Tr. 11-12. Michael attempted to make contact with SS on this date, but Stephanie's interference frustrated his efforts. For this reason, the twelve days in between October 4, 2015, and October 16, 2015, should not count against Michael.
{¶ 25} Further, the manner in which Michael's attempt to make contact with SS was frustrated is of significance. Stephanie-the custodial parent-told Michael that he would need to obtain legal counsel in order to schedule another visit with his daughter. Tr. 11-12, 26. In making this pronouncement, Stephanie imposed a condition on Michael's right to visit with his daughter. It is highly questionable whether Stephanie had any basis for unilaterally *535 and arbitrarily imposing such a condition upon Michael for visitation under the law. Nevertheless, in the absence of a court order governing visitation, Stephanie, as the custodial parent, had the defacto ability to control Michael's ability to see SS. In this context, it is clear that Stephanie was not merely telling Michael to find an attorney but was effectively telling Michael that some form of litigation would be necessary for him to see his daughter again.
{¶ 26} Even the trial court characterized Stephanie's condition as an "unusual request." Doc. 13. However, the trial court, in its analysis, did not consider the implications of this "unusual request." In order to see his daughter, Stephanie was going to require Michael to retain an attorney to pursue some form of legal action. This is a time consuming process for Michael to undertake merely to see his daughter. It appears that Michael would have had to find and retain an attorney, confer with his counsel, file the necessary paperwork, and go through the process of obtaining a visitation order from a trial court.
{¶ 27} If Stephanie had the latitude to impose such an "unusual request" unilaterally, the trial court should have allowed Michael the latitude that was necessary to comply with this condition and secure for himself the ability to see his daughter. Since he was not able to see his daughter until he complied with this condition, the time in which he was not communicating with his daughter in the immediate aftermath of this condition being imposed should not be counted against Michael. Better stated, Michael should have been given a reasonable amount of time to comply with this condition given the nature of Stephanie's request.
{¶ 28} Given these circumstances, the trial court should not have used October 4, 2015, or October 16, 2015, as the date at which the one-year time period began to accumulate against Michael. Instead, the trial court should have given Michael a reasonable amount of time from the date on which Stephanie unilaterally imposed a condition on his visitation rights-which was October 16, 2015-to comply with that condition. We need not define a reasonable amount of time in this case because Michael could not have fully complied with Stephanie's condition by October 31, 2015.
{¶ 29} Further, evidence was admitted before the trial court that showed Michael complied with the condition that Stephanie imposed. On September 30, 2016, Michael filed an action with the Mercer County Juvenile Court. Tr. 14, 32. This motion was filed within one year of October 4, 2015-which is the last date on which Michael was found to have been with SS-one year of October 16, 2015-which is the date on which Stephanie told Michael to get legal counsel-and within one year of an appropriate deadline that accounts for the reasonable amount of time Michael should have been given to comply with Stephanie's unilaterally imposed condition. In filing this motion with the Mercer County Juvenile Court, Michael was using the only recourse Stephanie left to him after she imposed the October 16, 2015, condition on his visitation with SS, taking the necessary steps to make contact with his daughter. Since this action is what Stephanie told Michael to do in order to make contact with SS, this action should be considered an attempt by Michael to make contact with SS.
{¶ 30} In this motion, he was also requesting more responsibility over the care of his daughter-in the form of a shared parenting plan-in addition to a court order that would protect his visitation rights. Thus, the subject matter of Michael's motion was the long term care and custody of SS. Since an active case on SS's long term care and custody was pending in another *536 court, the trial court should not have considered the petition to adopt SS let alone allow the adoption to proceed without Michael's consent. The subject of the case in the Mercer County Juvenile Court is Michael's rights as a parent. In this case, the trial court terminated Michael's parental rights while another court was actively exercising jurisdiction over issues that directly addressed Michael's parental rights and responsibilities with respect to SS.
{¶ 31} Probate courts have exclusive jurisdiction over the adoption of children. In re Adoption of Pushcar , 110 Ohio St.3d 332, 2006-Ohio-4572, 853 N.E.2d 647, ¶ 9, citing State ex rel. Portage Cty. Welfare Dept. v. Summers , 38 Ohio St.2d 144, 311 N.E.2d 6 (1974), paragraph two of the syllabus. A probate court may exercise its jurisdiction over an adoption proceeding while a juvenile court has continuing jurisdiction over that matter. In re Adoption of M.S.A. , 3d Dist. Mercer No. 10-17-01, 2017-Ohio-5771, 2017 WL 2929360, ¶ 16-18 ; In re Adoption of Joshua Tai T. , 6th Dist. Ottawa No. OT-07-055, 2008-Ohio-2733, 2008 WL 2315901, ¶ 37 ; In re Hitchcock , 120 Ohio App.3d 88, 103-104, 696 N.E.2d 1090, 1099 (8th Dist.1996) ; In re R.N.L.O. , 12th Dist. Warren No. CA2007-04-049, 2007-Ohio-4215, 2007 WL 2350987, ¶ 21.
{¶ 32} However, the Supreme Court of Ohio has held to "the bedrock proposition that once a court of competent jurisdiction has begun the task of deciding the long-term fate of a child, all other courts are to refrain from exercising jurisdiction over that matter." Pushcar at ¶ 10, quoting In re Adoption of Asente , 90 Ohio St.3d 91, 92, 734 N.E.2d 1224 (2000). Thus, "when an issue concerning the parenting of a minor child is pending in the juvenile court, a probate court must refrain from proceeding with the adoption of that child." Id. This applies "to all parenting issues pending in juvenile court." In re Adoption of G.B. , 3d Dist. Seneca No. 13-10-01, 2010-Ohio-5059, 2010 WL 4055551, ¶ 16, citing Pushcar and P.A.C. , supra .[4]
{¶ 33} Michael filed his motion for shared parenting in the juvenile court that had issued the child support order governing SS and the parties to this action. Tr. 32. This action was in process by the time that Sweigart filed his petition to adopt SS on October 31, 2016. Doc. 1. Since the Mercer County Juvenile court was already exercising jurisdiction over this matter, the Probate Division of the Van Wert County Court of Common Pleas should have refrained from allowing the petition to adopt SS to proceed without Michael's consent. Stephanie claims that she did not receive notice of this action prior to Sweigart filing his petition for adoption. Tr. 15. However, whether she had notice of this action does not alter the fact that Michael was complying with the condition she imposed on him and was attempting to see his daughter. The important fact is that the trial court did have notice that there was an active case pending in another court that addressed the long term care and custody of SS. Tr. 32. This fact-and the other factors mentioned in this analysis-have brought us to the conclusion that the trial court erred in finding that the adoption of SS could proceed without Michael's consent. For these reasons, his second and fourth assignments of error are sustained.
First and Third Assignments of Error
{¶ 34} The resolution of the second and fourth assignments of error in this case *537 make the issues raised in the first and third assignments of error moot. For this reason, this Court declines to address the merits of these arguments pursuant to App.R. 12(A)(1)(c).
Conclusion
{¶ 35} Having found error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Probate Division of the Court of Common Pleas of Van Wert County is reversed.
Judgment Reversed And Cause Remanded
ZIMMERMAN and SHAW, J.J., concur.

Stephanie's last name was Hogenkamp at the time of SS's birth. She has since married Wesley Sweigart and, having taken his surname, uses the name Stephanie Sweigart. Doc. 1. Tr. 2.

The action for shared parenting was filed on September 30, 2016. Michael's final visitation date with SS, according to Stephanie, was October 4, 2015. According to Michael, his final visitation date with SS was January 10, 2016. Thus, the filing of this action for shared parenting in Mercer County was done within one year of both dates.

In 2015, the understanding that Michael and Stephanie had was that Michael would get SS every other weekend. In this routine, Michael would pick up SS on the Friday evening of the weekend he was scheduled to have SS and would drop SS off at Stephanie's house on the following Sunday evening around 6:00 p.m. In his testimony, Michael stated that he had SS for the last time on the weekend of January 8-10. Stephanie testified that Michael had SS the last time on the weekend of October 2-4. Both parties, however, testified that Stephanie told Michael to obtain legal representation on the Friday he was going to pick up SS for his next scheduled appointment. Thus, this condition was not imposed two weeks from the last date on which he saw SS, but two weeks from date he picked SS up for his final weekend with her. If Stephanie's testimony is to be believed, this places this conversation on October 16, 2015, which is two weeks from the date on which she said Michael picked up SS for his last visit. If Michael's testimony is to be believed, this places the date of the conversation on January 22, 2016.

State ex rel. Allen Cty. Children's Servs. Bd. v. Mercer Cty. Common Pleas Court, Probate Div. is factually distinguishable from the present case. 150 Ohio St.3d 230, 2016-Ohio-7382, 81 N.E.3d 380. This case addresses the rights of parents in the process of an adoption while Allen addresses a situation where third parties were contesting an adoption. Id.