[Cite as *In re Adoption of S.T.B.*, 2024-Ohio-2031.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

IN RE:
THE ADOPTION OF:                                    CASE NO. 9-23-60

      S.T.B.

                                         **O P I N I O N**

[HEATHER B. - APPELLANT]

---

**Appeal from Marion County Common Pleas Court**
**Family Division**
**Trial Court No. 21 ADP 0023**

**Judgment Affirmed**

**Date of Decision:  May 28, 2024**

---

**APPEARANCES:**

    *Kelle M. Saull* **for Appellant**

    *Todd A. Workman* **for Appellee**

**WALDICK, J.**

{¶1} Petitioner-appellant, Heather B. ("Heather"), appeals the August 4, 2023 judgment of the Marion County Court of Common Pleas, Family Division, dismissing her petition to adopt her stepdaughter, S.T.B., after the trial court found that the consent of S.T.B.'s biological mother was required for the adoption. For the reasons that follow, we affirm.

*Procedural History*

{¶2} On October 28, 2021, Heather filed a petition pursuant to R.C. 3107.05 for adoption of S.T.B., who was born in 2014 and is the biological daughter of Heather's husband, Bradley B. ("Bradley"). The petition asserted that the consent of the respondent-appellee, S.T.B.'s biological mother, Taran J. ("Taran"), was not required for the adoption. Specifically, the petition alleged that Taran had failed without justifiable cause to provide more than de minimis contact with the child for a period of at least one year immediately preceding the filing of the adoption petition, and also that Taran had failed without justifiable cause to provide for the maintenance and support of the child as required by law or judicial decree for at least that same time frame.

{¶3} On August 16, 2022 and July 13, 2023, a hearing was held to determine whether Taran's consent was required for the adoption. Heather testified at the hearing, presented the testimony of three other witnesses on her behalf, and called

Taran to the stand as if on cross-examination. Following the presentation of Heather's evidence, Taran testified on her own behalf.

{¶4} On August 4, 2023, the trial court filed a judgment entry dismissing Heather's petition to adopt S.T.B. after ruling that Taran's consent was required for the adoption.

{¶5} On August 28, 2023, Heather filed the instant appeal, in which she raises one assignment of error for our review.

### Assignment of Error

**The court erred in finding that mother's consent is required for the adoption of S.T.B. because mother did not have more than de minimis contact with the child one year preceding the adoption petition and her lact [*sic*] of contact was not justified.**

{¶6} In the sole assignment of error, Heather asserts that the trial court erred in holding that Taran's consent was required in order for S.T.B. to be adopted. Heather argues that Taran did not have more than de minimis contact with S.T.B. in the year prior to the filing of the adoption petition, and that Taran's lack of contact with the child was not justified.

{¶7} A review of the record reflects that it was ultimately undisputed at the hearing that Taran had no contact with S.T.B. during the year prior to October 28, 2021, the date when Heather filed the petition to adopt. Thus, the sole question

before this Court on appeal is whether the trial court erred in finding there was justifiable cause for that lack of contact.[1]

{¶8} "[T]he right of a natural parent to the care and custody of his children is one of the most precious and fundamental in law." *In re Adoption of Masa*, 23 Ohio St.3d 163, 165, 492 N.E.2d 140 (1986). "Under most circumstances, both of a minor's natural parents must provide written consent prior to the adoption of that minor." *In re Adoption of S.S.*, 3d Dist. Van Wert No. 15-17-06, 2017-Ohio-8956, ¶ 16.

{¶9} However, R.C. 3107.07 sets forth exceptions to that general rule regarding consent. R.C. 3107.07(A), the exception relevant here, provides:

> Consent to adoption is not required of * * * [a] parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

{¶10} Because adoption terminates fundamental rights of the natural parent or parents, the Supreme Court of Ohio has repeatedly held that "'[a]ny exception to the requirement of parental consent [to adoption] must be strictly construed so as to

---

[1] While Heather also alleged in the adoption petition that Taran had failed without justifiable cause to provide for the maintenance and support of S.T.B. as required by law or judicial decree, that claim failed in the trial court after both Taran and Bradley testified that Taran regularly pays child support to Bradley for S.T.B. On appeal, Heather has abandoned the non-support claim.

protect the right of natural parents to raise and nurture their children.'" *In re Adoption of G.V.*, 126 Ohio St.3d 249, 2010-Ohio-3349, ¶ 6, quoting *In re Adoption of Masa*, *supra*, at 165, 492 N.E.2d 140 (1986), quoting *In re Schoeppner*, 46 Ohio St.2d 21, 24, 345 N.E.2d 608 (1976).

**{¶11}** The application of R.C. 3107.07(A) involves a two-step analysis. *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, ¶ 23. As this Court explained in *In re Adoption of K.C.*, 3d Dist. Logan No.8-14-03, 2014-Ohio-3985, at ¶ 23:

> The first step involves deciding a factual question—in this case, whether the parent willfully had failed to provide more than de minimis contact with the minor child. *See In re R.L.H.,* 2d Dist. Montgomery No. 25734, 2013–Ohio–3462, citing *M.B.* at ¶ 21. "A trial court has discretion to make these determinations, and in connection with the first step of the analysis, an appellate court applies an abuse-of-discretion standard when reviewing a probate court decision * * *." *M.B.* at ¶ 25. In the second step, if a probate court finds a failure to provide more than de minimis contact, the court then determines the issue of whether there is justifiable cause for the failure. *Id.* at ¶ 23. A probate court's decision on whether justifiable cause exists will not be disturbed on appeal unless the determination is against the manifest weight of the evidence. *Id.* at ¶ 24; *In re Adoption of Masa,* 23 Ohio St.3d 163, paragraph two of the syllabus, (1986).

**{¶12}** Pursuant to R.C. 3107.07, the party petitioning for adoption has the burden of proving, by clear and convincing evidence, that a parent failed to have contact with the child during the one-year period and that there was no justifiable cause for the lack of contact. *In re Adoption of Bovett*, 33 Ohio St.3d 102, 515 N.E.2d 919 (1987), paragraph one of the syllabus, following *In re Adoption of Masa*, *supra*,

paragraph one of the syllabus (extending *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985), paragraph four of the syllabus).

{¶13} As to the second part of the analysis, which is at issue here, "[s]ignificant interference by a custodial parent with communication between the non-custodial parent and the child, or significant discouragement of such communication, is required to establish justifiable cause for the non-custodial parent's failure to communicate with the child." *Holcomb*, *supra*, paragraph three of the syllabus.

{¶14} In *Holcomb*, the Supreme Court of Ohio noted that the term "justifiable cause" in R.C. 3107.07(A) lacks a precise definition, and the Court declined to define the term. *Id*., at 367, 481 N.E. 2d 613. Instead, the Ohio Supreme Court left to the trial court, as the finder of fact, the question of whether justifiable cause for failure to communicate with the child exists in a particular case. *Id*. The Ohio Supreme Court reasoned that the trial court "is in the best position to observe the demeanor of the parties, to assess their credibility, and to determine the accuracy of their testimony." *Id*.

{¶15} As noted above, the question of whether justifiable cause has been proven by clear and convincing evidence in a particular case is a determination for the trial court and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence. *See also Masa*, *supra*, at paragraph two of the syllabus.

{¶16} In *In re Z.C.*, ___ Ohio St.3d ___, 2023-Ohio-4703, at ¶ 14, the Supreme Court of Ohio recently reaffirmed how a manifest-weight review should be conducted, stating:

> When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. [*Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179] at ¶ 20. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Id.* at fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978).

{¶17} In the instant case, following the hearing, the trial court reviewed the evidence presented and made the following findings of fact in its judgment entry:

> [S.T.B.] was the child at issue in a Marion County Children Services case in Marion County Family Court case number 14 AB 0094. In the final Judgment Entry in that matter filed on January 29, 2015, (Taran's Exhibit A)[,] Brad * * * , [S.T.B.]'s biological father, was granted legal custody of [S.T.B.] and Taran was afforded parenting time supervised by Ashton or Susan Plumley or other supervisors at Brad's discretion. Taran's supervised parenting time was conditioned upon her remaining in or completing the drug court program in the general division of the Marion County Common Pleas Court. The orders from the January 29, 2015 Judgment Entry further stated, "These Orders shall be adopted as Orders in Case No. 2014 PC 0243."

The 2014 PC 0243 case is a juvenile court case related to the allocation of parental rights and responsibilities for [S.T.B.].

On July 16, 2021, approximately three and one-half months before Heather filed her Petition to adopt [S.T.B.], Taran filed a motion for reallocation of parental rights and responsibilities in case number 2014 PC 0243. She was represented by now-deceased attorney Dave Lowther. Brad was represented by attorney Rocky Ratliff.

In this matter, attorney Rocky Ratliff testified on behalf of Heather. He testified that there was a Zoom hearing on August 9, 2021 before a Family Court magistrate. He said that Taran was not present on the Zoom conference, but attorney Lowther was present. Mr. Ratliff said that because Taran had not documented that she was still participating in or had completed drug court and because Brad remained concerned about Taran's possible drug use, Brad would only agree to Taran having supervised visits at CAREFIT. He testified that attorney Lowther, on Taran's behalf, declined the offer of supervised parenting time. He acknowledged on cross-examination that he had no knowledge as to whether attorney Lowther relayed the offer to Taran. Attorney Ratliff was unaware of any efforts by Taran to see [S.T.B.] in the year prior to Heather's Petition other than the filing of Taran's July 16, 2021 Motion.

Heather testified that she and Brad were married on October 10, 2020. She said that she had contact with Taran via Facebook Messenger from March, 2019 to December, 2019, but had no contact with Taran in the year preceding the October 28, 2021 filing of her Petition to adopt [S.T.B.]. Heather testified that during the lookback period she did not thwart any efforts by Taran to see [S.T.B.] and that she had no knowledge of efforts by Brad to thwart attempts by Taran to see [S.T.B.].

Heather acknowledged that in March of 2019 there was a message from Taran indicating she wanted to see [S.T.B.]. Also, in March of 2019, Heather messaged Taran and said, "…however until you go thru the entire process that is required for those fighting for a relationship with their children the legal appropriate way than (*sic*) not much more I can offer you." (Taran's Exhibit B)

Heather also testified that she was unaware of any financial support from Taran during the year preceding the filing of the Petition. On cross-examination, Heather said that Brad may receive child support, and may have received child support during the lookback period. Heather said that Taran did not provide clothing or other in-kind support, nor did Taran pay toward [S.T.B.]'s medical bills. Heather acknowledged, however, that as far as she knew, none of [S.T.B.]'s medical bills had been provided to Taran. Heather said that Taran has not sent cards, letters, or gifts to [S.T.B.] for many years.

Heather testified that Taran had no contact with [S.T.B.] in the year prior to the filing of Heather's Petition on October 28, 2021, and further testified that Taran has not seen [S.T.B.] since she was three years old. Heather said that she maintained a Facebook account through which Taran could contact her.

Rae Ann DeVore (Rae) testified on behalf of Heather. She said that she has known Brad for thirteen years and has known [S.T.B.] her whole life. She said Brad is like a son to her and [S.T.B.] is like a grandchild. Rae testified that she supervised Taran's visits with [S.T.B.] two times per week when [S.T.B.] was an infant but has not supervised visits since [S.T.B.] was very young. Rae said that Taran knows where she works and should know her phone number but has not reached out to her to contact [S.T.B.].

Brad, [S.T.B.]'s father and Heather's husband, testified on Heather's behalf. He said the [*sic*] pursuant to a 2015 Order, he is [S.T.B.]'s residential parent. Brad said that Ashton and Susan Plumley were designated supervisors in the 2015 Order (See Petitioner's Exhibit 11), but that the Plumleys quit supervising Taran's visits because of Taran not appearing for visits and because they believed she was high at visits.

Brad also testified that he has been in the same home since [S.T.B.]'s birth and has had the same business location. Brad said that Taran knows where he works and lives. He has had the same phone number but acknowledged that he has blocked Taran's number on multiple occasions because of the nature of the communication from Taran. He said that Taran's communication did not include her asking to see [S.T.B.]. Brad testified that no restraining or protection orders limited Taran's ability to contact him or [S.T.B.] during the one-year

lookback period. He acknowledged that he told Taran he would contact law enforcement if she contacted him and that he told her he would call the police if she came to his place of business but said his threats to call law enforcement predated the one-year lookback period. Brad said that he received no communication from Taran during the year preceding October 28, 2021 regarding any effort to contact or see [S.T.B.] except the Motion Taran filed on July 16, 2021. (Taran's Exhibit F) Brad said there were no gifts, cards or letters from Taran to [S.T.B.] during the lookback period. He said that Taran has not inquired about [S.T.B.]'s school, school activities, other activities, or doctors. Brad testified that Taran last asked to see [S.T.B.] sometime prior to 2021, but he does not recall more specifically when the request occurred.

Brad said that he offered supervised visits at the August 9, 2021 pretrial through his attorney, Rocky Ratliff, and he understood the offer was rejected. Brad acknowledged that he received regular child support from Taran for [S.T.B.] in the year prior to the filing of Heather's Petition.

Taran * * * testified that she had no contact with [S.T.B.] during the year prior to October 28, 2021. She said that she had her last visit with [S.T.B.] in 2015, and that the visits ended because Brad had a disagreement with the father of her other two children. Taran acknowledged that she did not ask about where [S.T.B.] attended school to be able to attend activities, and in the communications used as exhibits in Court, did not ask to see [S.T.B.] or ask about her. Taran said that from 2019 to 2021 she would search on Facebook approximately weekly to see whether she was blocked. If she was not, she would message. She estimated that she was able to get through about four times. She said that in her messages she would point out that she had provided proof of her drug court graduation, but Brad always said no. Taran testified that Brad said that prior to seeing [S.T.B.], Taran would need to:

- Complete drug screens at Brad's office
- Provide a release of information to Brad for probation
- Complete drug screens at probation
- Complete an AOD assessment
- Complete EMDR therapy with Brad's psychologist in Columbus

-10-

- Leave her boyfriend Dustin [P.] and be single for a year
- Complete Thinking for a Change
- Complete parenting classes
- Finish probation

Taran said that she completed all the tasks except the EMDR therapy. She testified that the listed tasks were not imposed by Family Court, but rather were imposed by Brad. She testified that even after complying with Brad's tasks, she was still unable to see [S.T.B.]. She estimated that she and Brad met about five times, and he would ask what she had accomplished. Taran said that in the year prior to the filing of the Petition she tried to contact Brad by phone about every two weeks. She said she was always blocked, and that she knew she was blocked because her calls went directly to voicemail and she did not leave messages because she was blocked. Taran said Brad knew she had completed drug court because he attended the graduation.

Taran said she did not stop by Brad's office because when she stopped there in 2014 Brad called law enforcement and because Brad told her he could call the police if she stopped there or at his home. Taran said that in a phone conversation Brad told her he could have her other two children taken away. Taran said that she feared Brad because he has money and power.

Taran testified that when she was unable to contact Brad, she attempted to communicate through Heather but was eventually blocked. Taran said that as a single mother she was unable to gather the funds necessary to file her motion to modify parental rights and responsibilities before July of 2021. She said that she attempted to file a motion for contempt of the prior order on two occasions, but the clerks told her there was no prior order.*

Taran said that she knew nothing about CAREFIT visits being offered at a pretrial hearing in August of 2021. She said that she would have agreed to the supervised visits had she known they had been offered.

Taran denies failing to financially support [S.T.B.] in the year prior to the filing of Heather's Petition. Neither party provided documentation from the Child Support Enforcement Agency to indicate Taran's payment history for the year preceding October 28, 2021.

*fn1 The order from the January 29, 2015 Judgment Entry in case number 14 AB 0094 (the abuse, neglect, and dependency case) stated, "These Orders shall be adopted as Orders in Case No. 2014 PC 0243." The Orders were not populated into 2014 PC 0243 until after Taran's July 16, 2021 motion for reallocation of parental right [*sic*] and responsibilities.

(Judgment Entry, Docket No. 34, pp. 2-8).

{¶18} Upon applying the relevant legal standards to the evidence presented at the hearing, the trial court concluded:

> The Court finds that there is justifiable cause for Taran's failure to have contact with [S.T.B.] during the year prior to October 28, 2021. The Court comes to its conclusion based on Taran's credible and unrefuted testimony about the several conditions Brad imposed on her before he would allow Taran to have contact with [S.T.B.]. Taran's testimony that Brad threatened to have her other children removed was also credible and unrefuted. While Brad may not have had the actual ability to have the children removed, Taran's fear was reasonable.

(*Id*., p. 13).

{¶19} The trial court further found that while Taran could have done more to overcome Brad's interference with visitation, communication, and contact with S.T.B., Taran nonetheless provided facially justifiable reasons for her failure to have contact with S.T.B., and that Heather had failed to meet her burden to show that Taran was without justifiable cause for her lack of contact with her daughter. (*Id*.)

{¶20} Following our own thorough review of the record, we find, contrary to Heather's assertions on appeal, that the factual determinations made by the trial court are more than adequately supported by the evidence presented in the proceedings below. Further, the facts outlined by the trial court in its written decision constitute

clear and convincing evidence upon which the trial court reasonably relied in determining that justifiable cause existed for Taran's lack of contact with S.T.B.

{¶21} On appeal, Heather also argues that much of the evidence of "justifiable cause" relied upon by the trial court occurred prior to the year immediately preceding the filing of the adoption petition. However, as the trial court noted in its decision, "[a] probate court may examine any preceding events that may have a bearing on the parent's failure to communicate with the child, and the court is not restricted to focusing solely on events occurring during the statutory one-year period." *In the Matter of the Adoption of I.M.M.*, 5th Dist. Ashland, No. 16 COA 018, 2016-Ohio-5891, ¶ 29, citing *In re: Adoption of Lauck*, 82 Ohio App.3d 348, 612 N.E.2d 459 (9th Dist.1992).

{¶22} Upon considering all relevant factors, the entirety of the evidence presented, and remaining mindful that the trial court's judgment may have been based upon observing the demeanor of witnesses and other nuances that do not translate to the written record, we are unable to find that the trial court's decision was against the manifest weight of the evidence.

{¶23} The assignment of error is overruled.

*Conclusion*

**{¶24}** Having found no error prejudicial to the petitioner-appellant, Heather B., in the particulars assigned and argued, the judgment of the Common Pleas Court of Marion County, Family Division, is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI, P.J., and MILLER, J., concurs.**